# 26-220-cr

United States Court of Appeals
For the Second Circuit

———————————

Docket No. 26-220-cr

———————————

UNITED STATES OF AMERICA,

*Appellee,*

-against-

AUGUST CHERIMOND,

*Defendant-Appellant.*

———————————

APPEAL FROM A JUDGMENT OF
THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

———————————

## BRIEF FOR DEFENDANT-APPELLANT
## AUGUST CHERIMOND

———————————

Federal Defenders of New York, Inc.
 Appeals Bureau
52 Duane Street, 10th Floor
New York, New York 10007
Tel. No.: (212) 417-8731

Attorney for Defendant-Appellant
**AUGUST CHERIMOND**

**KENDRA L. HUTCHINSON**,
 *Of Counsel*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................. iii

STATEMENT OF JURISDICTION ..................................................1

QUESTION PRESENTED................................................................2

STATEMENT OF THE CASE ........................................................2

I.    Procedural Posture .................................................................2

II.   Statement of Facts ................................................................3

A.    Mr. Cherimond admits violating a condition of
supervised release...............................................................3

B.    The court sentences Mr. Cherimond to 12 months'
imprisonment because of his failure to keep his promise,
at the original sentencing, to be law-abiding, and the
"despicable," "terrible," "appalling" conduct underlying
the violation.......................................................................4

SUMMARY OF ARGUMENT.......................................................11

ARGUMENT...................................................................................12

The District Court Improperly Considered Retributive Factors
and Violated *Esteras v. United States* When It Revoked
Mr. Cherimond's Supervised Release and Sentenced Him to
12 Months' Imprisonment...........................................................12

A.    Standard of Review...........................................................12

B.    Under § 3583(e), a court may not consider retribution or
other punitive aims when revoking supervised release....13

C.     The district court violated *Esteras* and improperly considered retribution in sentencing Mr. Cherimond ....... 17

D.     Although Mr. Cherimond will be released from prison during the pendency of the appeal, the issue is not moot .............................................................................. 20

CONCLUSION ........................................................................ 22

# TABLE OF AUTHORITIES

**Cases**                                                **Page(s)**

*Esteras v. United States,*
606 U.S. 185 (2025) ..................................................................*passim*

*Johnson v. United States,*
529 U.S. 694 (2000) ............................................................... 15, 16

*United States v. Brooks,*
889 F.3d 95 (2d Cir. 2018)................................................................12

*United States v. Eaglin,*
913 F.3d 88 (2d Cir. 2018)................................................................12

*United States v. Fernandez,*
152 F.4th 124 (2d Cir. 2025) ...........................................................15

*United States v. Granderson,*
511 U.S. 39 (1994) ............................................................................16

*United States v. Haymond,*
588 U.S. 634 (2019) ............................................................... 15, 16

*United States v. Johnson,*
786 F.3d 241 (2d Cir. 2015)..............................................................12

*United States v. Juwa,*
508 F.3d 694 (2d Cir. 2007)..............................................................12

*United States v. Key,*
602 F.3d 492 (2d Cir. 2010)..............................................................20

*United States v. McNeil,*
415 F.3d 273 (2d Cir. 2005)..............................................................12

*United States v. Young,*
  998 F.3d 43 (2d Cir. 2021) ....................................................................21

**Statutes**

18 U.S.C. § 922(g)(1) .............................................................................2

18 U.S.C. § 3553(a)(2)(A) ............................................................13, 17, 18

18 U.S.C. § 3583(b)(2) ..........................................................................4

18 U.S.C. § 3583(c) ..............................................................................13

18 U.S.C. § 3583(e) .......................................................................*passim*

18 U.S.C. § 3583(h) ..............................................................................4

18 U.S.C. § 3624(b)(1) .........................................................................10

18 U.S.C. § 3742(a) ..............................................................................1

18 U.S.C. § 3231 ..................................................................................1

18 U.S.C. § 3559 ..................................................................................4

28 U.S.C. § 1291 ..................................................................................1

N.Y. Penal L. § 120.00 ......................................................................... 3

N.Y. Penal L. § 121.12 ................................................................. 1, 2, 3, 4

N.Y. Penal L. § 220.03 ..........................................................................4

N.Y. Penal L. § 240.26 ..........................................................................3

**United States Sentencing Guidelines**

U.S.S.G. § 7C1.5 .................................................................................5

iv

## STATEMENT OF JURISDICTION

August Cherimond appeals from a final judgment entered on January 29, 2026, in the United States District Court for the Southern District of New York (Hon. Cathy Seibel), revoking his term of supervised release, upon his admission that he violated a condition by committing a state crime (N.Y. Penal L. § 121.12). A.47.[1] He was sentenced to 12 months' imprisonment and two years of supervised release. A.50-51. A notice of appeal was timely filed on January 30, 2026. A.54. This Court has jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). The District Court had jurisdiction under 18 U.S.C. §§ 3231 and 3583(e)(3).

---

[1] The Appendix is cited "A." The Probation Department's March 19, 2021 Presentence Investigation Report prepared in connection with the underlying judgment of conviction is cited "PSR" and provided under separate cover, along with the July 14, 2025 Violation of Supervised Release Report and Petition ("VOSR Pet."). Docket entries in the case of *United States v. Cherimond*, No. 20-cr-00413-CS (S.D.N.Y.), are denominated "DE."

1

## QUESTION PRESENTED

Whether the district court improperly considered retributive factors and violated *Esteras v. United States*, 606 U.S. 185 (2025), when it revoked Mr. Cherimond's supervised release and sentenced him to 12 months' imprisonment.

## STATEMENT OF THE CASE

### I. Procedural Posture

In July 2024, Mr. Cherimond began serving a three-year term of supervised release in the Southern District of New York, after his incarceration for knowing possession of ammunition following a felony conviction, 18 U.S.C. § 922(g)(1). PSR 1; VOSR Pet. 2. In July 2025, he was charged with violating five supervised release conditions by committing several state crimes and failing to disclose he had been arrested. VOSR Pet. 3-4. On January 21, 2026, he admitted he violated one supervised release condition (Specification Three) by committing the state crime of second-degree strangulation, N.Y. Penal L. § 121.12. A.29-30. The district court revoked Mr. Cherimond's supervised release, dismissed the remaining specifications, and sentenced him the same day to 12 months' imprisonment and two years of supervised release. A.47.

2

Mr. Cherimond is currently serving the 12-month prison term and is scheduled to be released on July 21, 2026.[2]

## II. Statement of Facts

### A. Mr. Cherimond admits violating a condition of supervised release.

In July 2021, Mr. Cherimond pleaded guilty before Hon. Cathy Seibel to knowingly possessing ammunition following a felony conviction, and was sentenced to 54 months' imprisonment and three years of supervised release. A.17-18.

In July 2024, Mr. Cherimond completed the term of incarceration and began serving supervised release. VOSR Pet. 1-2. About a year later, on July 14, 2025, the Probation Department filed a five-specification Violation of Supervised Release Report and Petition, based on several alleged violations of state law and Mr. Cherimond's failure to report he had been arrested. VOSR Pet. 2-3.[3]

---

[2] *See* Record of August Cherimond, Bureau of Prisons Online Inmate Locator, available at https://www.bop.gov/inmateloc/.

[3] Specification One alleged commission of second-degree misdemeanor harassment, N.Y. Penal L. § 240.26, based on an argument over a parking space on June 17, 2025, that led to physical contact and both parties calling the police. VOSR Pet. 2. Specifications Two and Three alleged third-degree misdemeanor assault and second-degree strangulation, N.Y. Penal L. §§ 120.00, 121.12, respectively, based on a July 7, 2025 "physical altercation" between Mr. Cherimond and his romantic partner. *Id.* Specification Four alleged seventh-degree misdemeanor possession of

3

On January 21, 2026, Mr. Cherimond agreed to admit committing one violation (Specification Three) in exchange for the government dismissing the remaining four specifications. A.24. Thus, at the revocation proceeding, Mr. Cherimond agreed that, in July 2025, he committed the state crime of second-degree strangulation, N.Y. Penal L. § 121.12, "in that [he] obstructed the breathing or blood" of his romantic partner. A.29-30.

**B. <u>The court sentences Mr. Cherimond to 12 months' imprisonment because of his failure to keep his promise, at the original sentencing, to be law-abiding, and the "despicable," "terrible," "appalling" conduct underlying the violation.</u>**

As planned, the parties proceeded directly to sentencing after Mr. Cherimond admitted the violation. A.24.[4] Because the underlying § 922(g)(1) offense was a Class C felony, Mr. Cherimond's statutory maximum was two years of prison and three years of supervised release. 18 U.S.C. §§ 3559, 3583(b)(2), 3583(e)(3), 3583(h). The violation

---

crack and cocaine, N.Y. Penal L. § 220.03, on July 8, 2025, after Mr. Cherimond was found slumped over in his car at a traffic light in the early morning. VOSR Pet. 3. Specification Five alleged Mr. Cherimond failed to inform his probation officer he had been arrested in June. VOSR Pet. 3. New York state courts dismissed all criminal charges against Mr. Cherimond. A.33.

[4] Although the parties submitted documentary exhibits prior to the proceeding, DE ## 64, 65, they did not file written sentencing submissions.

was Grade B, and Mr. Cherimond's original Criminal History Category was III. VOSR Pet. 3-4. Accordingly, the advisory policy statement recommended a prison sentence of between 5 and 11 months. *See* U.S.S.G. § 7C1.5 (policy statement).

The government joined the Probation Department in requesting a sentence of 12 months' incarceration and two years of supervised release based on the nature of the conduct underlying the violation:

> This, unfortunately, represents something of a pattern for Mr. Cherimond, the conduct underlying specification 3. His background is riddled with instances of violence. . . . [T]oo often, the side [of Mr. Cherimond] that resulted in the conduct underlying this specification, that resulted in the offense that led to his underlying conviction and that resulted . . . in his prior conduct and convictions that are laid out in the PSR, . . . that side comes out too often, and as a result, a substantial sentence is warranted for purposes of, among other things, deterrence and protection of the community.

A.30-31. The government then discussed injuries sustained by Mr. Cherimond's partner and referred to past convictions involving other instances of "violence or threatened violence," discussing those offenses' facts in some detail. A.31-32. In the government's view, a "substantial" sentence was needed "to demonstrate to the defendant that continuing

5

criminal conduct will be met with increasingly significant sanctions to help deter him and also to protect the community from continued violent crimes by the defendant." A.32.

At the outset of the defense presentation, counsel referenced recent Amendment 835 to the United States Sentencing Guidelines (U.S.S.G.) and argued that sentencing for a violation of supervised release is "not supposed to be punitive or, you know, retribution; it's supposed to focus on rehabilitation." A.33. Counsel agreed this was a "serious incident and requires a serious sentence," but focused on Mr. Cherimond's history, characteristics, and rehabilitative efforts: he had "led a very difficult life" and required therapy to deal with his anger management and substance abuse issues. A.33-34. Upon his release from prison, helpful therapy was available to him, but he was not able to continue with it even though he wanted to. A.34. While on supervision, he was consistently employed, and organized volunteer efforts for the holidays (a Thanksgiving turkey drive). A.34-35.

Mr. Cherimond and his partner fell on hard times, however, because his work hours were reduced and "things started to slide"—ultimately, he relapsed. A.35-36. The incidents leading to the

6

violations all occurred within the very short window of time after this; before that, he had been doing well. A.36. He reached out to his probation officer when "everything kind of fell apart," and asked for help and mental health treatment. A.36. Given the foregoing, as well as the classes and programs he was taking while in pretrial detention, the defense asked for an eight-month prison sentence: this term would mean "he still would have time in custody to serve, but it would give him more time on supervision, which would address a lot of his issues." A.36-37.

Mr. Cherimond spoke at sentencing. He acknowledged his "gigantic mistake," which was the result of "emotions, stress, and fear of failure," and apologized to the court, the Probation Department, his romantic partner, and the community in general for "violating the terms of [his] agreement" A.38-39.

The court imposed sentence after consideration of the "§ 3553(a) factors that are incorporated into § 3583(e)." A.39. It began by focusing on the conduct underlying the violation:

> . . . The first [such factor] is the nature and circumstances of the offense, and this is a pretty terrible offense. Beating on and choking into unconsciousness the person you say you love is

7

> pretty high on the list of despicable things to do, and unfortunately it is all too consistent, as the Government points out, with Mr. Cherimond's record. * * * [I]t's impossible to avoid the conclusion that the nature and circumstances of this offense . . . are terrible . . . .

A.39.

The court then discussed Mr. Cherimond's "history and characteristics," which it reduced to Mr. Cherimond having "committed acts of violence, serious acts of violence, repeatedly, including domestic violence repeatedly." A.40. It said, "I might be more convinced that we don't really have to worry about them recurring if they weren't so consistent with what Mr. Cherimond has done in the past." A.40.

The court also referenced Mr. Cherimond's statement during the original sentencing in 2021, reading and quoting it at length. A.40-41. At that time, Mr. Cherimond had apologized for his actions and promised the court he would do better in the future. A.40-41. The court dismissed that earlier apology and Mr. Cherimond's failure to remain law-abiding: "you were saying all the right things. Couldn't put them into action." A.41. It then similarly dismissed Mr. Cherimond's current apology, expressing "worry" for the sake of Mr. Cherimond's romantic partner that he again "will not put [the words] into action." A.41.

8

Moving on, the court acknowledged "deterrence and protecting the public from further crimes." A.41. Aside from noting "[t]hat is a big issue here, given Mr. Cherimond's history," the court did not elaborate on this factor. A.41. It also acknowledged the "need for treatment" factor, but only said, "as [the government] put it, there are two sides to Mr. Cherimond, and when the bad one comes out, people end up in the hospital sometimes." A.42.

In the end, the court "agree[d] with Probation that 12 months [of] imprisonment is the appropriate sentence." A.42. It also stated:

> I am tempted to go higher, because I think domestic violence in general is appalling and this is a particularly appalling incident of it, but by doing that, there will be two more, two more years of supervision, which I think is a good idea. . . . I am going to impose 12 months imprisonment. That's going to be followed by two years of supervised release

A.42.

Later, near the close of the proceeding, the court addressed Mr. Cherimond, telling him, "I really hope this is the last time you and I see each other. * * * I kind of discounted your words today because they were all too similar to what you said last time," and "it's good to be sorry afterwards, but not if you put somebody—but if you put

9

somebody in the hospital or, god forbid, kill them, it's way too little and way too late." A.46. The court also admonished him, "I know you have issues and I'm glad you want to work on them, but there's been too much violence on your part." A.46. The proceeding ended with the court explaining it intentionally imposed a sentence that would ensure Mr. Cherimond did not earn time off for good behavior, because "[t]his was too serious." A.47.[5]

---

[5] Under 18 U.S.C. § 3624(b)(1), the Bureau of Prisons awards good conduct time credit to people serving sentences of "more than 1 year." Thus, a 12-month sentence, like Mr. Cherimond's, will not earn good time credit, while a sentence of 12 months and 1 day will. The district court here rejected the latter sentence for this reason. A.47.

## SUMMARY OF ARGUMENT

The district court revoked Mr. Cherimond's supervised release and sentenced him to 12 months' imprisonment primarily based on two factors: his failure to remain law-abiding despite promising he would at the original sentencing; and to be proportionate to the "despicable," "terrible" conduct underlying the violation, which the judge believed was "consistent" with Mr. Cherimond's "pattern" of criminal conduct in the past.

Basing the sentence on promoting respect for the law, and reflecting the seriousness of the offense, is retributive. And, under *Esteras v. United States*, 606 U.S. 185 (2025), and 18 U.S.C. § 3583(e), a district court may not consider "backward-looking," retributive factors such as these when sentencing for a violation of supervision. Accordingly, the district court procedurally erred in imposing Mr. Cherimond's unlawful sentence. This Court should vacate the sentence and remand for resentencing.

11

## ARGUMENT

**The District Court Improperly Considered Retributive Factors and Violated *Esteras v. United States* When It Revoked Mr. Cherimond's Supervised Release and Sentenced Him to 12 Months' Imprisonment.**

### A. <u>Standard of Review.</u>

"Sentences for violations of supervised release are reviewed under 'the same standard as for sentencing generally: whether the sentence imposed is reasonable.'" *United States v. Brooks*, 889 F.3d 95, 100 (2d Cir. 2018) (quoting *United States v. McNeil*, 415 F.3d 273, 277 (2d Cir. 2005)). This Court evaluates both the procedural and substantive reasonableness of sentences. *United States v. Eaglin*, 913 F.3d 88, 94 (2d Cir. 2018). Procedural reasonableness concerns how a district court arrives at the sentence, while substantive reasonableness concerns the length of a sentence. *See, e.g., United States v. Juwa*, 508 F.3d 694, 698 (2d Cir. 2007). "In making this determination, issues of law are reviewed de novo." *United States v. Johnson,* 786 F.3d 241, 243 (2d Cir. 2015).

12

B. **Under § 3583(e), a court may not consider retribution or other punitive aims when revoking supervised release.**

In *Esteras*, the Supreme Court considered whether courts may consider 18 U.S.C. § 3553(a)(2)(A) in revoking supervised release—"the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." The Court's answer was no. The Court noted that Congress had studiously omitted subsection (a)(2)(A) from the list of factors a court may consider in imposing or revoking supervised release, 18 U.S.C. § 3583(c), (e). So while courts may consider the "forward-looking" aims of sentencing—deterrence, incapacitation, and rehabilitation—they may not consider the "backward-looking" end of retribution. 606 U.S. at 196. A court may not revoke supervised release "based on the view" that "the defendant deserves additional punishment." *Id.* at 200.

*Esteras* concerned retribution for the underlying, original offense that led to supervised release in the first place. The Court did not decide whether judges could consider retribution for the new violation conduct. *See id.* at 194 n.5. "Because § 3553(a)(2)(A) speaks only to the 'offense,' and 'offense' here can mean only the underlying criminal

13

conviction," the Court addressed "only whether § 3583(e) precludes" considering "retribution for the underlying criminal conviction." *Id.* Thus, *Esteras* left open whether courts may consider punishment and retribution "for the violation of the conditions of the supervised release." *See id.*

But the text of § 3583(e), Supreme Court precedent, the reasoning of *Esteras*, and the overriding purposes of supervised release all compel the conclusion that district courts also may not consider retribution for a violation's underlying conduct.

Beginning with the text, by omitting reference to § 3553(a)(2)(A) from § 3583, Congress left no room for courts to consider retributive factors for any purpose: "Congress studiously omitted all reference to retribution from the supervised-release statute, so retribution should play no role in revocation hearings." *Esteras*, 606 U.S. at 205 (Sotomayor, J., concurring) (opining that "district courts revoking a term of supervised release should not consider retribution for any purpose"). "As to either a supervised-release violation or the underlying offense, the backward-looking end of retribution is out of bounds." *Id.* at 206.

14

*Johnson v. United States*, 529 U.S. 694 (2000), accords with this view. In *Johnson*, the Supreme Court rejected the Sixth Circuit's view that a "revocation of supervised release 'imposes punishment for defendants' new offenses for violating the conditions of their supervised release.'" *Id.* at 699-700. Viewing revocation as a new punishment for new offense conduct, the Court deemed, would raise "serious constitutional questions." *Id.* at 700. After all, a judge—not a jury— decides a revocation, applying a standard of a mere preponderance of the evidence. *Id.* at 700. If revocation—and the sentence imposed after it—were regarded as punishment for the new violation, there would be no basis to deny a defendant his Fifth and Sixth Amendment rights to a jury finding of guilt beyond a reasonable doubt. *Id.* And if the violation is its own criminal offense and is prosecuted separately from the violation, this "would raise an issue of double jeopardy" if the revocation of supervised release were also punishment for the same offense. *Id.*; *cf. United States v. Fernandez,* 152 F.4th 124, 132 (2d Cir. 2025) (sanctions for violations of supervised release do not punish "the particular conduct triggering the revocation," quoting *United States v. Haymond,* 588 U.S. 634, 658 (2019) (Breyer, J., concurring)).

15

To avoid these constitutional problems, the Supreme Court concluded in *Johnson* that any revocation sentence must be regarded as "part of the penalty for the initial offense." *Johnson*, 529 U.S. at 700. As a matter of logic, then, if a court cannot use revocation to punish that original offense, *Esteras*, 606 U.S. at 194-95, then there is no lawful basis for considering punishment at all at revocation.

Finally, the purposes of supervised release buttress this conclusion. Supervised release is distinct from both probation and parole. Unlike probation, supervised release "is not a punishment in lieu of incarceration." *United States v. Granderson*, 511 U.S. 39, 50 (1994). And unlike parole, "supervised release wasn't introduced to replace a portion of the defendant's prison term." *Haymond,* 588 U.S. at 652 (plurality op.). Instead, supervised release is intended "only to encourage rehabilitation after the completion of [a defendant's] prison term." *Id*. It is supposed to "fulfill[] rehabilitative ends, distinct from those served by incarceration." *Johnson*, 529 U.S. at 59. Supervised release serves the forward-looking ends of rehabilitation and reintegration. To employ it as an instrument of retribution would contravene congressional intent.

16

## C. **The district court violated *Esteras* and improperly considered retribution in sentencing Mr. Cherimond.**

The record in this case shows that Mr. Cherimond was sentenced in violation of *Esteras* and 18 U.S.C. § 3583(e).

*First*, the district court explicitly and repeatedly referenced Mr. Cherimond's promise to be law-abiding at the original sentencing, and factored his failure to keep that promise into the sentence it imposed during the revocation proceeding. A.40-41. In the court's view, Mr. Cherimond had not lived up to the aspirations he expressed at that time, years before. Mr. Cherimond was "saying all the right things" then, but "[c]ouldn't put them into action" upon release. A.41. And his inability to do what he said he would do—comply with the law—was why he was back before the court.

These repeated references to the original sentencing and Mr. Cherimond's unfulfilled promises to be lawful demonstrate the court was considering the "backward-looking" factor of his perceived disrespect for the law. But "promot[ing] respect for the law," 18 U.S.C. § 3553(a)(2)(A), is not a proper factor at a revocation sentencing. *See Esteras*, 606 U.S. at 204 (improper to sentence, even in part, to promote "respect for the law"). Further, the court expressly used Mr.

17

Cherimond's perceived lack of respect for the law as a reason to dismiss his revocation-proceeding apology. The court "discounted [Mr. Cherimond's] words today because they were all too similar to what [he] said last time." A.46. His statement ought to have amounted to mitigation, i.e., a reason to impose a lower sentence. Instead, the court implicitly deemed it untruthful and "discounted" it.

In addition, the court's dwelling on Mr. Cherimond's failure to "put [his words] into action" suggests the court felt it may have been duped by his apology and promise at the original sentencing, and thus gone too easy on Mr. Cherimond the first time around. But "provid[ing] just punishment for the offense," 18 U.S.C. § 3553(a)(2)(A), also isn't a factor applicable to violation sentences. *See Esteras*, 606 U.S. at 189-90 (vacating and remanding where district court noted that the defendant's original sentence was "rather lenient").

*Second*, the district court also violated *Esteras* by expressly and repeatedly premising the length of the revocation sentence on the domestic-violence conduct underlying the violation. This could not be clearer from the record at hand: the court described the conduct Mr. Cherimond admitted as "despicable," "terrible," and "appalling." A.39,

18

A.42. It outright stated, several times, that it based the sentence length on the gravity of the conduct. In one example, the court said it was "tempted to go higher" because of its views on domestic violence. A.42. In another, the court explained it was imposing 12 months, not a year-and-a-day, because the latter would mean Mr. Cherimond could be released earlier than 12 months due to good conduct time credit: "This was too serious for a year and a day." A.47.

In sum, the sentencing proceeding here on the violation of supervised release was "backward-looking." This is all the more clear in light of the short shrift given by the court to the "forward-looking" aims of deterrence and protecting the public (the court merely noted it as a "big issue"), as well as Mr. Cherimond's need for treatment (it dismissed the "side" of Mr. Cherimond that had shown the possibility of rehabilitation). The court thus turned this violation into its own offense, and chose a sentence length based on retributive aims. This violated *Esteras* and 18 U.S.C. § 3583(e).

Defense counsel preserved this issue by objecting, at the outset of the proceeding, to any sentence being based on "punitive" principles or "retribution," A.33, which served to "make the district court aware" that

19

retributive principles could not be factored into the sentence. *Esteras*, 606 U.S. at 202. Accordingly, the court's procedural error at sentencing, which was "clear" and "obvious," *id*. at 203, requires remand.

### D. Although Mr. Cherimond will be released from prison during the pendency of the appeal, the issue is not moot.

Mr. Cherimond is due to be released on July 21, 2026. However, this Court should find the issue is not moot, and reach the merits of his claims. When a defendant has been released from prison, a challenge to the sentence is rendered moot only "when there is either no possibility or only a remote and speculative possibility that the district court could or would impose a reduced term of supervised release" upon remand. *United States v. Key*, 602 F.3d 492, 494 (2d Cir. 2010) (internal citations, quotations, and brackets omitted).

Here, the district court made clear that it believed Mr. Cherimond would benefit from a term of supervised release. A.42. Indeed, the defense did the same. A.37. But the court did *not* say it would impose the same term of supervised release—two years—regardless of the prison term. Nor did it say that it thought two years of supervision was the only appropriate term. Thus, it is not "remote" or "speculative" that Mr. Cherimond could receive a shorter term of supervised release if this

20

Court were to remand for resentencing based on proper factors only. *See, e.g., United States v. Young*, 998 F.3d 43, 50-51 (2d Cir. 2021) (holding that an appeal was not moot where the defendant "remain[ed] eligible for a reduction in his term of supervised release").

Notably, the district court *did* know how to indicate its firm belief that a certain sentence term was necessary: as discussed, it did so as to the prison term, when it expressly noted it wanted Mr. Cherimond to serve 12 months, not less. A.47. Also notable, the district court linked its imposition of the term of supervised release with its improper application of retributive principles, when it stated that it was "tempted to go higher" with the prison term because of the "appalling" domestic violence, but then indicated its concerns were alleviated by "two more years of supervision." *Id.* 20. Thus, if the court were required to resentence without improper consideration of retributive principles, there is a non-speculative possibility that it would reduce his term of supervision.

21

## CONCLUSION

For the foregoing reasons, the Court should vacate the violation

sentence and remand for resentencing.

Dated:    New York, New York
        June 24, 2026

Respectfully submitted,

/s/

Kendra L. Hutchinson

Federal Defenders of New York, Inc.
   Appeals Bureau
52 Duane Street, 10th Floor
New York, NY 10007
(212) 417-8731
kendra_hutchinson@fd.org

*Counsel for August Cherimond*

22

## CERTIFICATE OF SERVICE

I certify that I have caused a copy of this Brief to be filed with the Court's ACMS system, which will effect service on all counsel of record.


Dated:    New York, New York
           June 24, 2026



/s/
_____

**KENDRA L. HUTCHINSON**

23

## CERTIFICATE OF COMPLIANCE

1.  This Brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B)(i) and 32(e), and Local Rule 32(a)(4)(A) because:

> this Brief contains 4,068 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f); and

2.  This Brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and type style requirements of Fed. R. App. P. 32(a)(6) because:

> this Brief has been prepared in a proportionally spaced typeface using Microsoft Word with 14 characters per inch in Century Schoolbook type style.

Dated:    New York, New York
         June 24, 2026

/s/

**KENDRA L. HUTCHINSON**

24